IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TIMOTHY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-079 |
| | ) | |
| JOHN TRIPP, Doctor, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Dodge State Prison ("DSP") in Chester, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, on December 1, 2011, the Court reviewed Plaintiff's complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 7). Plaintiff has submitted an amended complaint (doc. no. 8), and it is this document that the Court will now screen.

## I. BACKGROUND

Plaintiff names the following Defendants in his amended complaint: (1) Marty Allen, the Warden at DSP; (2) John Tripp, a doctor at DSP; (3) Lieutenant Welcher, who Plaintiff identifies as the shift leader at the time of his medical emergency; (4) Ms. Brazard, medical staff at DSP; (5) Ms. Samual, medical staff at DSP; (6) Ms. Blackburn, medical staff at DSP; and (7) Mr. Moore, also identified as medical staff at DSP. (Doc. no. 8, pp. 1, 4.) Plaintiff alleges that on or about June 20, 2011, he began having medical problems, including headaches, slurred speech, weight loss, and difficulty standing and walking. (Id. at 5.) Plaintiff further alleges that "[b]lood test[s] were done," and on June 21, 2011, Plaintiff "was advised he was to see [a] doctor," but that he "never saw the Doctor." (Id.)

Plaintiff asserts that on July 1, 2011, Defendant Blackburn diagnosed Plaintiff with an "ear problem," and began treating him for this condition. (Id.) Plaintiff states that by July 6, 2011, "I could barely walk, my speech was slurred, and my head hurt so bad I could not do for myself." (Id.) On that day, Plaintiff alleges that he informed Defendant Welcher that he was having a "medical emergency," and Defendant Welcher sent him "to medical," where he was told to continue his ear treatment. (Id.) Plaintiff asserts that at about 4:00 in the afternoon, he suffered a light stroke, but "medical did nothing." (Id.) Plaintiff alleges that a prison official told him he would see a doctor the following day, but Plaintiff suffered another stroke at about 10:30 on the night of July 6th, causing his "left side to malfunction." (Id.) Plaintiff further alleges that on July 7, 2011, he was sent to the hospital, where he remained for seven days while undergoing treatment for a stroke. (Id. at 6.) Plaintiff alleges that because of his strokes, he now suffers pain, slurred speech, trouble walking and standing, and difficulty controlling his movements. (Id.)

Plaintiff states that his medical file reflected that he had previously suffered a brain aneurism on an unspecified date; because "all Defendants were aware of [this]," he asserts that they "should have taken proper steps to appraise [his] medical condition" when he first complained of medical problems. (Id. at 8.) Plaintiff further asserts that Defendant Allen failed to "assure that the medical department staff were performing their duties . . . when he knew or should have known" that Plaintiff needed medical attention. (Id. at 7.) Plaintiff alleges that although Defendant Tripp was aware of his condition, his indifference and failure to take "proper procedures" resulted in Plaintiff's strokes. (Id.) Furthermore, Plaintiff alleges, the "rest of the medical staff" failed to give him treatment and incorrectly diagnosed him. (Id. at 8.) Finally, Plaintiff alleges that Defendant Welcher failed to ensure that he received proper care once Plaintiff requested medical attention. (Id.)

## II.    DISCUSSION

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the amended complaint fails to state a claim for relief against Defendants Allen, Brazard, Samual, and Moore.

First, Plaintiff does not explain how any of these Defendants participated in the denial of treatment leading to Plaintiff's strokes. In particular, although Plaintiff alleges in conclusory fashion that Defendants Brazard, Samual, and Moore, as members of the Medical Department, failed to properly treat him (doc. no. 8, p. 8), he does not indicate that he saw any of these Defendants for treatment. Nor does he explain how these Defendants were otherwise aware that he was suffering immediate problems other than to say that all Defendants were aware that he had suffered an aneurism at some unspecified date in the past. (Id.) Similarly, Plaintiff does

3

not explain how Defendant Allen, as Warden, participated in denying Plaintiff needed medical treatment. However, "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted).

Furthermore, Plaintiff's allegations that Defendant Allen failed to assure him treatment and that Defendants Brazard, Samual, and Moore failed to treat him are vague and conclusory at best. However, vague and conclusory allegations are not sufficient to state a claim. See Taylor v. Singletary, 148 F.3d 1276, 1285 (11th Cir. 1998) (noting that a "bare, conclusory allegation . . . is insufficient, without more, to warrant further evidentiary consideration"); see also Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (noting that conclusory allegations are not entitled to an assumption of truth in determining whether a complaint states a claim upon which relief may be granted). Accordingly, Plaintiff's allegations fail to state a viable § 1983 claim against Defendants Allen, Brazard, Samual, and Moore. On that basis alone, these Defendants should be dismissed.

Moreover, Plaintiff's claims against Defendant Allen are inadequate to the extent that Plaintiff is attempting to hold him responsible for the acts of the remaining Defendants, against whom Plaintiff directs allegations of deliberate indifference. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional

4

violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Although Plaintiff alleges that Defendant Allen "knew or should have known" that Plaintiff was in need of medical attention (doc. no. 8, p. 7), nowhere does Plaintiff allege that Defendant Allen actually participated in the denial or delay of his medical care. Similarly, as noted above, Plaintiff fails to allege a "causal connection" between Defendant Allen and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[1] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff has offered no allegations suggesting that Defendant Allen knew about any widespread abuse or that he was responsible for a custom or policy resulting in delayed or inadequate medical care. Accordingly, Plaintiff has not made the necessary showing with

---

[1]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

respect to Defendant Allen.

In sum, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Allen, Brazard, Samual, and Moore.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Allen, Brazard, Samual, and Moore be **DISMISSED** from this case.[2]

SO REPORTED and RECOMMENDED this 28th day of December, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[2]In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Tripp, Blackburn, and Welcher based on Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical needs.